UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

---

**JON Q. WRIGHT and**
**JQ LICENSING, LLC**

    **Plaintiffs,**

v.

**SHO-ME BAITS LLC**
**and**
**BASIL LEE PRICE IV**

    **Defendants.**

Case No.:

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

---

## COMPLAINT

Plaintiffs Jon Q. Wright ("JQW") and JQ Licensing, LLC (collectively, the "Plaintiffs"), by and through their undersigned attorney, hereby pray to this honorable Court for relief based on the following:

## INTRODUCTION

1.    This action arises from Defendants' willful copyright infringement of Plaintiffs' copyrighted and valuable illustration of a crappie fish, registered under U.S. Copyright Registration No. VA-1-153-915 (hereinafter, "Legends Crappie" or the "Subject Work"). Plaintiffs seek to obtain injunctive relief against Defendants Sho-me Baits LLC ("SMB") and Basil Lee Price IV ("Price") (collectively, the "Defendants") to stop their continuing infringement and prevent any further unlawful infringement of the Subject Work. Defendants' infringements have damaged Plaintiffs' business and threatens to damage it further. Plaintiffs seek injunctive relief,

declaratory relief, and damages for the full amount of Plaintiffs' losses, as well as Defendants' profits, or if elected, statutory damages, as well as attorneys' fees, and costs pursuant to 17 U.S.C. §§ 504(c) and 505.

## THE PARTIES

2. Plaintiff Jon Q. Wright is an individual domiciled and residing in the State of Montana and author of numerous fish illustrations, including the Subject Work, shown *infra*.

3. Wright is the author and owner of the Subject Work.

4. Wright is a member of JQ Licensing LLC, a limited liability company duly formed under the laws of the State of Minnesota and registered in the State of Montana as a foreign limited liability company (hereafter, "JQ Licensing"). Wright licenses his artwork exclusively through JQ Licensing.

5. Defendant SMB is a limited liability company formed and existing under the laws of the State of Missouri, with a principal place of business in Missouri.

6. Defendant Price is an individual residing in Mansfield, Missouri.

## JURISDICTION AND VENUE

7. This is an action for copyright infringement arising under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended).

8. This Court has subject matter jurisdiction over Plaintiffs' copyright infringement claims under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended) and 28 U.S.C. §§ 1331 and 1338.

9. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1440 in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred and the judicial district wherein the Defendants can be found.

**PLAINTIFFS' WORK OF ART**

10. In 2000, JQW authored Legends Crappie, which consists of a highly detailed depiction of a crappie fish, and is depicted directly below:



11. JQW duly registered Legends Crappie with the U.S. Copyright Office under Registration No. VA 1-153-915, as a collection of illustrations of different species of fish, all authored by JQW. This registration, entitled "Legends Series Artwork," has an effective date of June 1, 2001. A copy of the Legends Series Artwork registration certificate is annexed hereto as **Exhibit A**.

12. JQW's practice of creating highly detailed and unique wildlife illustrations is an extraordinarily time-consuming process, involving a dizzying multiplicity of steps.

13. In order to create his detailed fish illustrations, including the Subject Work, JQW first faces the laborious task of catching a trophy-sized specimen of the subject fish.

14. Once a trophy fish is caught, JQW takes detailed photographs of the fish, freezes, and then partially thaws the fish in order to mold the body into the desired position. He then impales the

fish with numerous stakes to preserve the particular and desired pose, then captures a 360° perspective of the manipulated through a series of photographs.

15. Only then does JQW begin the sketching process, referring to the photographs to painstakingly depict the precise details of the fish with detail paintbrushes.

16. JQW then takes numerous artistic liberties with certain aspects of each fish. He expresses elements of each fish in a manner that is creative and unique to his style and artistic abilities.

17. With Legends Crappie, JQW has taken creative license with certain body parts, including but not limited to, body and tail length to depict the fish "in action," swimming in freshwater, or to otherwise give the viewer the impression that the fish is "trophy sized" by creatively manipulating the size, shape, and direction of anatomical features in ways which are not possible to fish in nature.

18. JQW's artwork has been painstakingly created, with each minute detail being depicted precisely in the artwork.

19. JQW estimates that he has spent hundreds of hours painting a single one of his fish illustrations, touching each individual painted fish scale with a paintbrush between three and five times.

20. JQW artwork is very valuable, as there are not many artists painting freshwater fish, and even fewer creating works with the type of detail employed by JQW.

21. Because of JQW's unique talents, painstaking attention to detail, and unique expression of fish of all species, his artwork is highly pursued.

22. JQW's success as a wildlife illustrator, and by implication the value of his artwork, is dependent on experience, patience, and dedication, and each of his paintings is built on his talent and 40 years of expertise.

## DEFENDANTS' INFRINGING CONDUCT

23. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

24. Defendants are in the business of producing, manufacturing, and selling fishing lures, bait, and similar fishing related accessories.

25. In order to promote, advertise, or otherwise market its business, Defendants designed, created, reproduced, distributed, and/or displayed a logo containing the Subject Work (the "Infringing Logo").

26. Defendants (a) reproduced the Infringing Logo, or a trivial variation thereof, as part of its product packaging, (b) displayed the Infringing Logo, or a trivial variation thereof, on SMB's website, product listings, social media pages, and as part of marketing material, e.g., photographs and videos promoting products on which the Infringing Logo, or a trivial variation thereof, is affixed, (c) distributed the Infringing Logo, or a trivial variation thereof, as part of its product packaging, and (d) distributed other merchandise bearing the Subject Work and Infringing Logo.

27. The Infringing Logo contains an exact, or virtually identical, copy of the Subject Work.

28. An exemplar Infringing Logo containing Legends Crappie is reproduced directly below:



29. A comparison of Legends Crappie (left) and an exemplar Infringing Logo incorporating Legends Crappie (right) is reproduced directly below:

 

30. The visual comparisons demonstrate an unlawful copying of protectible and highly specific elements of expression, including, but not limited to a) positioning/placement of the fin, tail, body, and other particularized expressions of anatomical features, b) the proportions of the various anatomical features relative to one another, c) the shading and coloring of different areas of the crappie, d) the particular shape and size of the fins, tails, and other anatomical features, e) the pose of the crappie, and f) the highly specific spot pattern across the entire crappie.

[remainder of page intentionally left blank]

31. Directly below is an image wherein the Subject Work is overlayed the Infringing Logo and set to 50% opacity so that Infringing Logo and Subject Work are equally visible:



[remainder of page intentionally left blank]

32. Directly below is another image wherein the Subject Work is superimposed over part of the Infringing Logo, and set at 25% opacity:



33. All of the visual comparisons herein demonstrate that Defendants copied the Subject Work, in virtually every aspect, and incorporated the Subject Work as part of the Infringing Logo.

34. The allegations herein are made as to all material, products, photographs, advertisements, etc., that Defendants used, created, copied, marketed, displayed, distributed, or sold that incorporate the Subject Work, and the images and comparisons depicted herein are only exemplars.

35. Defendant Price, as the sole member, director, officers, and/or shareholder of SMB, maintains exclusive control, management, and operation of SMB.

36. Price personally participated in the infringing acts described herein by, at the very least, one or more of the following infringing acts: (a) displaying or otherwise publishing the Infringing Logo to the SMB website and social media pages, (b) creating and designing the Infringing Logo; (c) reproducing the Subject Work as part of the Infringing Logo; (d) reproducing the Infringing Logo onto product packaging, or otherwise affixing the Infringing Logo onto product packaging; (e) distributing products bearing the Subject Work, e.g., t-shirts and other merchandise; and/or (f) instructing, directing, or otherwise causing the creation of the Infringing Logo and the product packaging bearing the Infringing Logo.

37. Defendants' individual and joint infringing acts were undertaken to reap the creative and artistic benefit and value of the Subject Work.

38. By failing to obtain Plaintiffs' authorization to use Subject Work, or to compensate Plaintiffs for the use, Defendants avoided payment of license fees and other financial costs associated with obtaining permission to exploit Subject Work, as well as the restrictions that Plaintiffs are entitled to, and would place, on any such exploitation as conditions for Plaintiffs' permission, including the right to deny permission altogether.

39. Defendants had access to the Subject Work, including, without limitation, through Plaintiff JQ Licensing's website and social media accounts or by viewing the Subject Work on third-party websites or third-party products.

40. Defendants willfully misappropriated the Subject Work, and with blatant and reckless disregard for Plaintiffs' rights in and to the Subject Work, by failing to ensure its use of the same was proper, despite the fact that Defendants knew, or should have known, of its infringing nature.

41. In September of 2023, Plaintiffs discovered Defendants use of the Infringing Logo and thereafter notified Defendants of Plaintiffs' copyrights to the Subject Work and demanded that Defendants cease and desist in their infringing conduct, as alleged herein.

42. Defendants acknowledged receipt of Plaintiffs' correspondence and represented that they would cease using the Infringing Logo and remove the same from all marketing materials, websites, product packaging, etc.

43. Despite Defendants' representations that they would cease using the Infringing Logo, Defendants continue to commercially exploit the Subject Work and the Infringing Logo.

44. As of the date of filing this Complaint, Defendants continue to offer for sale, display, sell, and distribute products bearing the Infringing Logo through their website. Annexed hereto as **Exhibit B** is a true and accurate copy of Defendants' website wherein the Infringing Logo is displayed and products bearing the Infringing Logo are offered for sale.

45. In late November of 2023, products were purchased from Defendants' website as part of a test order. Some or all of these products did not display the Infringing Logo on their product listing pages, unlike other products, such as those displayed in **Exhibit B**, hereto.

46. Upon delivery and receipt of the test order, it became evident that each of the products were put into individualized packaging, and that the Infringing Logo was affixed to the packaging. A photograph of one of the products from the test order is reproduced immediately on the subsequent page:



47. Upon information and belief, and despite unequivocal knowledge of Plaintiffs' copyrights, Defendants have continued to affix the Infringing Logo onto their product packaging for all of their products and thereafter distributed their products, and by extension, the Infringing Logo, to all of their customers.

48. As a result of Defendants' acts of infringement as alleged herein, Defendants received added commercial exposure, namely from the promotional/marketing efforts of third parties that

11
Case 6:23-cv-03394-MDH   Document 1   Filed 12/28/23   Page 11 of 19

purchased products bearing the Infringing Logo, publishing photographs of those products, and thereafter "tagging" Defendants social media account in order to draw attention to Defendants social media page, products, and website.

49. Third-parties were promoting Defendants through published social media posts, which included photographs of products bearing the Infringing Logo. These acts continued to occur after Defendants' possessed unequivocal knowledge of Plaintiffs' copyrights.

50. Defendants continuing acts of infringement after receipt of the Plaintiffs' notice of rights amounts to a blatant and reckless disregard for Plaintiffs' rights in and to the Subject Work.

51. As a result of Defendants' infringement of Plaintiffs' copyrights in and to the Subject Work, Plaintiffs have suffered significant damage. Specifically, Plaintiffs have lost royalties and licensing revenue and have suffered dilution and diminishment of the value of the Subject Work.

## COUNT I
### (COPYRIGHT INFRINGEMENT – 17 U.S.C. §101, *et seq.* - Against All Defendants and Each)

52. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

53. JQW is the sole owner of the Subject Work and holds a valid copyright registration in accordance with the United State Copyright Act.

54. The Subject Work is copyrightable subject matter under 17 U.S.C. §102(a).

55. JQW has complied in all respects with the provisions and requirements of the Copyright Act.

56. Prior to the acts complained of herein, JQW duly registered the copyrights in and to the Subject Work with the United States Copyright Office.

57. JQW has exclusive rights under 17 U.S.C. §106 to reproduce, prepare derivative works of, distribute copies of, and publicly display the Subject Work.

58. Upon information and belief, Defendants, and each of them, had access to the Subject Work through (a) viewing Plaintiffs' online portfolio; (b) viewing and/or purchasing licensed exploitations of the Subject Work; and/or (c) viewing and/or downloading illegally reproduced, imported, and/or distributed copies of the Subject Work by third parties.

59. Access is also established by the striking similarity and/or identicality between the Subject Work and the crappie fish exploited by Defendants, precluding any possibility of independent creation.

60. As detailed *supra.*, the Infringing Logo is identical or virtually identical to Legends Crappie.

61. The crappie fish in the Infringing Logo is identical to the crappie fish in the Subject Work.

62. The Infringing Logo copies all or virtually all protectable elements of expression unique to JQW's artistic style, as well as his creative and particular expressions of a crappie fish, as described herein.

63. Defendants, and each of them, have infringed Plaintiffs' rights by copying the Subject Work and subsequently creating, making and/or developing directly infringing works and/or derivative works featuring the Subject Work.

64. Defendants, and each of them, were directly involved in the reproduction, distribution, display, adaptation, and/or creation of a derivative work, using the Subject Work.

65. Due to Defendants' acts of copyright infringement as alleged herein, Plaintiffs have suffered damages in an amount to be established at trial, including without limitation lost profits, royalties, and a diminution in the value of the misappropriated works.

66. As a result of the acts of infringement complained of herein, Defendants received revenues it would not have otherwise received, added brand value, and indirect sales and profits it would not have otherwise received.

67. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

68. Defendants, and each of them, have committed copyright infringement with actual or constructive knowledge of Plaintiffs' rights such that said acts of copyright infringement were willful, reckless, malicious, and in blatant disregard of Plaintiffs' rights. Such willfulness provides the basis on which Plaintiff seeks additional forms of relief.

69. In the alternative, Plaintiffs claim statutory damages under 17 U.S.C. §504(c)(1) for Defendants' negligent unauthorized use and copyright infringement.

70. Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

## COUNT II
### (SECONDARY COPYRIGHT INFRINGEMENT – Vicarious Infringement)

71. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

72. To the extent that the Infringing Logo was created by a presently unknown third party, Defendants, and each of them, are vicariously liable for the direct infringement alleged herein because Defendants had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

73. Defendants, and each of them, have full control over, and final decision-making authority, over the content of any marketing, advertising, or promotional material, including the Infringing Logo.

74. Defendants, and each of them, maintain a right and practical ability to stop or limit the direct infringement of the presently unknown third parties, yet declined to do so, namely that Defendants; (a) had the ability to review, approve, decline, or otherwise supervise the creation of marketing, advertising, and promotional material created for SMB, including but not limited to the Infringing Logo; and/or (b) controlled the SMB website and social media pages and had the practical ability to publish and remove content, including the Infringing Logo, product packaging featuring the Infringing Logo, and photographs of the Infringing Logo;

75. By publishing the Infringing Logo and incorporating the same onto product packaging without performing basic due diligence, Defendants failed to exercise their right and ability to stop or limit infringing behavior.

76. By continuing to commercially exploit the Infringing Logo or otherwise displaying product listings featuring the Infringing Logo, Defendants failed to exercise their right and ability to stop or limit infringing behavior.

77. By continuing to commercially exploit the Infringing Logo as part of its product packaging Defendants failed to exercise their right and ability to stop or limit infringing behavior.

78. By allowing third parties to publish photographs of products bearing the Infringing Logo, despite Defendants' knowledge of Plaintiffs' copyrights, Defendants failed to exercise their right and ability to stop or limit the infringing behavior.

79. Defendants had an obvious and direct financial interest in the unlicensed copying, reproduction, distribution, and display of Infringing Logo as the same were used to promote,

market, and advertise SMB's products, create brand value, draw relevant individuals to SMB's website and social media pages, and generate revenue from the sale of products bearing the Infringing Logo.

80. The Infringing Logo serves as a "draw" for customers to purchase SMB's products.

81. Price, as the sole owner/shareholder of SMB, had a direct and obvious financial interest in the unlicensed copying, reproduction, distribution, and display of Infringing Logo because all sales through SMB follows directly to Price.

82. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

83. Upon information and belief, Defendants' has committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Clarke to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement. Within the time permitted by law, Plaintiffs will make their election between actual damages and statutory damages.

84. Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

## COUNT II
### (SECONDARY COPYRIGHT INFRINGEMENT – Contributory Infringement)

85. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

86. Defendants, and each of them, knowingly induced, participated in, aided and abetted in, and profited from the illegal use of the Subject Work as alleged herein.

87. Despite clear and unequivocal knowledge of the infringing nature of the Infringing Logo, Defendants encouraged, induced, or otherwise materially contributed to, third parties publishing photographs featuring products bearing the Infringing Logo onto social media.

88. Defendants had knowledge of, or reason to know, that certain third parties have published and would continue to publish photographs featuring products bearing the Infringing Logo onto social media.

89. At the very least, and upon notice of Plaintiffs' rights to the Subject Work, Defendants were able to take steps to stop further infringing activity of third parties, however failed to do so.

90. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

91. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

92. Upon information and belief, Defendants' has committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Clarke to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement. Within the time permitted by law, Plaintiffs will make their election between actual damages and statutory damages.

93. Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs requests judgment against Defendants, and each of them, as follows:

A. that the Court enter judgment against Defendants setting forth that Defendants have willfully infringed Plaintiffs' federally registered copyrights to the Subject Work as contemplated by 17 U.S.C. §504(c)(2);

B. alternatively, that the Court enter judgment against Defendants setting forth that Defendants have infringed Plaintiffs' federally registered copyright to the Subject Work, pursuant to 17 U.S.C. § 501;

C. that Defendants and their respective agents, officers and servants be enjoined from importing, manufacturing, distributing, displaying, offering for sale, selling or otherwise trafficking in any materials that infringe Plaintiffs' copyrights in and to Subject Work;

D. impounding all unauthorized material that bears infringing copies of Plaintiffs' copyrighted artwork in the possession or control of Defendants pursuant to 17 U.S.C. §503(a)(1)(A), and ordering destruction of all unauthorized material bearing Walleye Green Lure, pursuant to 17 U.S.C. §503(b);

E. that Plaintiffs be awarded all profits of Defendants plus all losses of Plaintiffs, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages for willful infringement as available under 17 U.S.C. § 504(c);

F. that Plaintiffs be awarded their attorneys' fees as available under 17 U.S.C. § 504(c) or other applicable statute;

G. that Plaintiffs be awarded pre- and post-judgment interest as allowed by law;

H.  that Plaintiffs be awarded the costs of this action; and

I.  that Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Respectfully submitted,

Date: December 27, 2023

By: /s/ Katherine M. Flett
Katherine Flett, Esq., #68183MO
Danna McKitrick, P.C.
7701 Forsyth Blvd. Suite 1200
St. Louis, MO 63105
314.726.1000 / 314.725.6592 (fax)
KFlett@dmfirm.com
Bar # 68183 (MO)

Dmitry Lapin, Esq. (*pro hac vice* pending)
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
dmitry@axenfeldlaw.com
917-979-4570
329670(PA)

*Attorneys for Plaintiffs Jon Q. Wright, and JQ Licensing, LLC*
4856-0187-7657, v. 2